THE NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY

*v.*

HENRY HEPBURN.

THE NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY

*v.*

DANIEL HEPBURN.

THE NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY

*v.*

ROBERT HEPBURN.

[Decided December 26th, 1906.]

1. The right of a corporation to take and hold title to an interest in real estate cannot be denied by the grantor, but can only be contested by the public authorities.

2. The grant of a right to maintain a telephone line over certain premises conferred on the grantee the right to construct a single line of poles. and to place thereon any number of cross-arms and wires.

3. A deed to a water company granted a right of way over the grantor's land for the laying of water pipes within a space not exceeding ninety-nine feet wide, "with the right to set up, operate and maintain a telegraph or telephone line or lines thereon, and with the right of ingress and egress to and from said right of way for all purposes."—*Held*, that such grant did not confine the water company to a telegraph or telephone line used exclusively for the purposes of its water works plant, but entitled a telephone company, under an assignment from the water company, to use such right of way for the maintenance of a commercial telephone line.

4. Where defendants granted a right of way for the maintenance of a telephone line to complainant's assignor, and thereafter defendants contended that complainant company had increased the burden of the easement beyond the scope of the original grant, and thereupon entered and

cut down certain of the wires from the poles, &c., complainant was not required to establish its right to maintain its line in the condition that existed before defendants' acts complained of in order to entitle complainant to an injunction restraining further interference with its wires.

5. Where a deed to a right of way for a telephone line was unambiguous, parol evidence was inadmissible to limit it to a grant for the maintenance of a non-commercial line.

6. Where plaintiff was a *bona fide* assignee of a right of way for the maintenance of a telephone line, it was not bound by an alleged oral agreement between the original parties to the deed conveying such right of way that the line should be used only for the benefit of the grantee in connection with its water works plant.

---

Three causes tried together. On final hearing on bill, answer and proofs.

*Mr. Gilbert Collins,* for the complainant.

*Mr. Adrian Riker,* for the defendants.

PITNEY, V. C.

The object of these bills is to protect the complainant in the enjoyment of an easement in land by enjoining the disturbance thereof by the defendants. The easement was created by the predecessors in title of the several defendants in the three causes (which were tried together) by grant made to the predecessor in title of the complainant. The grant was for the right to set up, operate and maintain "a telegraph or telephone line or lines" over certain lands, and a telephone line was at once erected and has ever since been maintained.

The complainant and its predecessors in title have been in the possession and enjoyment of this easement for several years, and their right to do so has never been and is not now seriously contested by the several defendants.

The defendants justify their action complained of by complainant, which consisted of cutting down certain of the wires, &c., on the arms of the poles constituting the telephone line, on the ground that the complainant is increasing the burden of the easement beyond the scope of the original grant.

That I conceive to be the question involved in these causes, and its solution depends upon the true construction of the terms of the grant. It was made by the predecessors in title of the defendants to the East Jersey Water Company, and by it assigned in part to the city of Newark.

One point made by the defendants may be dealt with at the start. They contend that the East Jersey Water Company had no power to take and accept a grant of a right to maintain a telephone or telegraph system. The answer to this objection is simply that it does not lie in the mouth of the grantor of real estate or an interest in real estate to set up that the grantee was incapable of receiving and accepting the title or right so conveyed. Only the public authorities can take advantage of that disability. The authorities on that question are abundant and are collected and collated by Justice Harlan in *Fritts* v. *Palmer, 132 U. S. 282* (at *p.* 291 *et seq.*).

Coming now to the grant itself, the language is this, as found in the deed from Henry Hepburn and wife to the East Jersey Water Company, dated July 3d, 1891, the grantors

"do hereby grant and convey to the East Jersey Water Company, * * . * its successors and assigns, the right of way over, through and across the lands hereinafter described, situate * * * in and upon which to lay, operate and maintain a water pipe or water pipes for the transportation of water to the city of Newark, in said state, and other places; such pipe or pipes to be laid within a space not exceeding the width (99 feet) particularly described in the description hereinafter set forth, *with the right to set up, operate and maintain a telegraph or telephone line or lines thereon,* and with right of ingress and egress to and from said right of way for all purposes."

Then follows a description of the right of way ninety-nine feet wide.

After the *habendum* clause, which follows the description, we find this language:

"The possession and use of the said premises are to be and remain in the said grantors, their heirs, executors, administrators and assigns, subject to the grant herein made, as fully as if this conveyance had not been executed."

This language is the same in each of the conveyances of the predecessors in title of the defendants, and was probably found in a printed form used by the East Jersey Water Company in acquiring a right of way for their works from the northern portion of Morris and Passaic counties to the city of Newark and elsewhere.

That company assigned to the city of Newark its rights in this right of way by a deed dated May 2d, 1892, which recites an agreement of September 24th, 1889, and then conveys to the city all the works in the meantime erected by the water company,

"with all and singular their appurtenances, adjuncts and appliances of whatever nature, kind or description soever. * * * And also all and every the lands and rights of way over which the conduit or conduits, pipe line or lines, have been laid or constructed, and all and singular the lands and rights of way acquired. * * * Together with all and singular the ways, profits, privileges and advantages," &c.,

with a corresponding *habendum.*

This deed seems to be ample to convey every sort of right which the water company acquired by the conveyances from the defendants.

Later on, however, in 1900, another agreement was made between the water company and the city by which the water company expressly conveyed to the city its right, title and interest in the existing telephone line here in question, with an exception or reservation to the water company of the right to maintain two telephone or telegraph wires upon the poles conveyed, and a joint agreement for the maintenance of the poles.

This right was later on assigned by the city of Newark to the complainant by deed dated August 24th, 1905. That assignment is special and reserves certain rights in the city, or rather, in consideration of the conveyance, the complainant herein agreed to perform certain services for the city.

Shortly after this arrangement the complainant entered upon the right of way and replaced the telephone poles already in existence with larger poles and placed upon them larger arms and prepared to string upon them a greater number of wires, but did not increase the number of poles. The sole increase of

the burden of the easement was a subsequent increase in the number of wires strung on the poles.

As soon as this increase was made the defendants entered on the right of way and cut off all the wires, *manu forti.* Subsequently they restored two wires, being the number in use before the increase. Upon *ex parte* application to this court an injunction was granted and under its protection the cut wires were restored.

It is not easily perceived how the adding of additional wires, and, if you will, arms on the poles, increases perceptibly the burden of the easement. The language of Mr. Justice Dixon, in *Slingerland* v. *Newark, 54 N. J. Law (25 Vr.)* (at *p. 69*), is significant in this connection. "Under these circumstances it is not apparent how the prosecutor can have any legal concern with the quantity of water drawn through the aqueduct, or with the use made of so much of it as the public does not need." In fact the circumstances show that the right and interest of the owners of the fee in the soil is of little practical value. It resembles the ownership of the soil of a railway strip subject to the easement of the railroad.

The East Jersey Water Company conveyed to the city of Newark the right of way for pipes and telephone lines over only a part of the whole strip twenty-four feet in width. The water company reserved to itself the right to lay pipes for its own use on the rest of the strip.

The city has and maintains two large parallel mains beside its line of telephone poles. Besides these easements is the general right of way from end to end of the whole strip, which is naturally and necessarily in constant use, and must be nearly or quite exclusive in its character.

But the complainant itself has encouraged the defendants in the notion that the additional use to be made by it of this telephone line over and above that which the city previously used has some pecuniary value by providing, by a sort of stipulation in its contract of assignment with the city, that it would attempt to acquire from all the owners of the fee along the miles of the pipe line the right to make this additional burden on the land.

This right it did acquire, on what was to it satisfactory terms, from all the other owners of the fee, but was unable to agree with the defendants.

This conduct on the part of the complainant ought not, and will not, prejudice its right to the relief it asks in this court if such right is clear under its contract.

The defendants assert that it is not clear. Their counsel does not argue that the grant is not in terms very broad and general, and I have already expressed the opinion that they cannot take advantage of the circumstance that the water company was not capable, under its charter, to enter into the business of carrying on a telephone line for public purposes, but their counsel relies on a single word in the grant, taken in connection with the circumstances, to manifest an intention on the part of the grantors to confine the use of the telephone line to a use in connection with and as an adjunct to the beneficial use of the great water works the water company was about to construct.

The word relied upon is the single word "with," which follows the grant of the right to lay, operate and maintain a water pipe or water pipes over the land in question, and precedes the words "the right to set up, operate and maintain a telegraph or telephone line or lines" on the land.

But two matters must be taken into account in considering the force of the word "with." First, the grant is a right to maintain a line or lines, leaving the number unlimited. Now, it is quite clear and undisputed that by a line of telegraph or telephone poles is meant a line of poles carrying an unlimited number of wires, and that such a line is not rendered plural in its nature by having more than one wire stretched upon it. It still remains a single line, hence the use of the plural in the grant is significant. And the question arises, How could it be supposed that the water company could ever need more than one line of poles for its use in connection with the water works? The other matter is that the grant of the right to maintain telephone and telegraph line or lines is followed in the same part of the sentence with a grant of ingress and egress to and from the right of way "for all purposes."

Now, it seems to me that the words "for all purposes" cannot be entirely ignored, although its immediate connection is with a grant of a right of way.

Moreover, it seems to me that if the parties had intended to limit the right to maintain the telegraph and telephone poles to a use strictly in aid of the original construction and subsequent maintenance and operation of the great water works they would have said so.

The fact is that the burden of the telephone and telegraph line of poles is not affected or increased or varied by the number of messages sent over the wires, and hence there was no occasion to make any provision on this subject.

If the defendants' contention in this behalf is sound, then it follows that it is not within the right of the water company or its assignee, the city, or the complainant, as the assignee of the latter, to send a single message from the city of Newark over the line to Newfoundland which does not relate to the business of the water-supply, and, according to the practice here adopted by the defendants and contended for by counsel, the sending of such a message would authorize the defendants to enter and, *manu forti,* destroy the wires.

The contention of the defendants is, as before stated, that the use of the word "with" in the grant confines the use of the telephone line to purposes strictly adjunct to and in aid of the grant of the right to lay water pipes, which was for the "transportation of water to the city of Newark, in said state, and other places." For this contention counsel relies upon three adjudged cases, which I will now refer to.

The first is *Leeke* v. *Bennett, 1 Atk. 470,* a decision by Lord Hardwicke, which arose out of the construction of a clause in a will as follows: "I give to my niece, Elizabeth Martin, during the time of her natural life, my house on Mays Hill, in Greenwich, with all the household goods that shall be found therein at the time of my decease."

The estate of the testator in the house was a term of years with only ten years unexpired. The question was whether the gift to the niece of the household goods was for life or in fee,

and it was held that the word "with" so connected the household goods with the house as that the estate in those was limited in the same manner as that in the house. The lord-chancellor relied upon the fact that the words "during her natural life" preceded the gift of the house, and remarked: "If the words 'during her natural life' had been subjoined to the devise of the house it had not been so clear a case, though I think that would not have varied the law of the case, * * * but those words, being put before the devise, must operate equally on both parts of the subsequent devise, and the same interest passed in both. The word 'with' would have had the same effect and been considered in the same manner in the case of a grant."

Here it is to be observed that the use of the house and the use of the goods consisted in substantially the same act or series of acts; unless they were separated one could not be used without the other, and the circumstances that they were not separated made the subject of the devise in effect a single one of the house and furniture. This circumstance differentiates that case from the present one.

Here there was no necessary or even natural unit of use between the water pipes for carrying water from Newfoundland to Newark and the telephone line; either could be used, and were, in fact, used without the other. There was nothing common in the mode of use. The telephone line was simply a convenience, and although used as a convenience, not as a necessity, in maintaining and operating the water pipes, the actual use of each was quite distinct and dissimilar.

The next case cited is *Richards* v. *Baker et als., 2 Atk. 321.* That also was the construction of a will. There the testator gave his widow £2,000, to be paid in six months after his decease, and then proceeds:

"I do also give and bequeath to my dear and loving wife all my household goods, furniture, plate, linen and china in my house at Edmonton, wherein I now dwell, or to the said house belonging, and also the said house, gardens, fields and lands thereto belonging, so long as she continues my widow, and no longer; and I *likewise* give her my jewels, coach, chariot and coach horses."

The master of the rolls decreed the widow to leave with the master a schedule of all the several things specifically bequeathed to her during widowhood, which was the usual mode of limiting her right to a life estate. The matter came on before the lord-chancellor on appeal, and he said that he had to determine what is the relation and extent of the words of limitation "so long as she continued a widow, and no longer;" whether they are to be confined to the house at Edmonton or to be extended to the whole; and he held that it was to be confined simply to the house and the household goods, and did not include the jewels, coach, chariot and coach horses. Careful consideration of that case seems to me to make against the defendants rather than in their favor, for the gift of the jewels, &c., was connected with the other gift by the word "likewise," which means "in like manner," and might well be construed to mean "to the same extent." But the lord-chancellor held otherwise.

These two decisions by Lord Hardwicke illustrate the true distinction to be applied in such cases. In the one case the natural and necessary use of the furniture with the house made the two a single subject of the gift, while in the other case the jewelry, coach, chariot and horses, though convenient, were in no sense necessary to the use of the house, and their use was entirely distinct from it. The present case falls under the latter category. Water works like those erected by the East Jersey Water Company had been erected and maintained many years before the invention and use of telegraphs and telephones.

The next case cited by defendants is *Durham and Sunderland Railway Co.* v. *Walker, 2 Adolph. & E. (N. S.) Q. B. 940,* also reported in *2 Gale & D. 326; 11 L. J. Exch. 442.* In that case the court of exchequer chamber had before it on bill of exceptions and writ of error a construction put by Justice Coltman at *nisi prius* on a reservation out of a lease granted for years by the dean and chapter of the city of Durham to one Walker of a right in certain lands. Under that reservation the lessors had granted to the defendant the right to build an ordinary double-track railway for through traffic, and an action at law had been brought by the tenant for years against the persons acting under the grant. The reservation was of

"woods, trees, mines, quarries and seams of clay, and *with* full and free authority and power to cut down, carry away, * · * * said woods and trees, and to dig and carry away the mines, quarries, * * * *with* free ingress, egress and regress, way, leave and passage to and from the same or to or from any other mines, quarries, * * * *with* carts and all manner of carriages, and also all necessary and convenient ways, passages, * * * for the purposes aforesaid, and *particularly* laying, making and granting wagonway or wagonways in or over the premises or any part thereof, paying reasonable damages."

The learned judge at *nisi prius* declared his opinion that if the railway was made for other purposes as well as for the carriage of coals and minerals it was not such a road as could be made in pursuance of the exceptions and reservations contained in the indenture of the demise, and he directed the jury that if they thought the railway was so made for such other purposes, as well as for the carriage of coals and minerals, then they ought to find a verdict for the plaintiff.

The court of errors and appeals held that that direction was not right. It held that the plaintiff could not claim for a trespass affecting his present possession of the land, it being in the occupation of a sub-tenant, but that it was an injury to the inheritance, or rather the portion of the term which would remain to him after the expiration of the under lease out of the term of years which was granted to him, and it used this language:

"Now, if the railway is such a railway as the defendants, at the time when it was formed, might lawfully make for the purposes for which when made they might lawfully use it, the plaintiff can have no ground of complaint by reason of the intention of the defendants also to use it for other purposes for which they have no right to use it. Such an unwarranted use of the railway, if afterwards put in execution, may entitle the tenants in possession to maintain an action of trespass, but the mere intention to commit such a trespass is no injury to the reversioner, and we therefore think that the direction of the learned judge was incorrect. The proper question for the jury, as it appears to us, was, not whether the railway was made for other purposes as well as for the carriage of coals and minerals, but whether it was such a railway as, at the time it was made, it

was reasonable and proper to make for the purposes for which it was lawful to make it, and for those purposes only."

But the court then proceeds to determine what would be the proper direction on a new trial. It will be observed that all reservations were there declared to be "for the purposes aforesaid," which refers entirely and exclusively to the clauses giving what is called "way leave." And then, after "the purposes aforesaid," follows: "And *particularly* of laying, making and granting wagonway or wagonways," &c. Now, that word "particularly" was the word upon which the case turned, and it shows clearly that the words which follow it were intended to be a mere amplification of the language which had preceded it. The court refers to the word "with" in the previous part of the reservation and says it means as an incident merely. That is quite plain when you read it, because, as well remarked by the court, the reservation of the timber and the minerals without a right and privilege of removing them would be nugatory, and those reservations of way leave were no more than what the law would imply. The construction put upon the word "with" in that case does not seem to me to reach the present case. That case turned upon the force of the word "particularly" and not on the force of the word "with."

For the reasons I have stated I am unable to limit the grant here in question in the manner contended for by the defendants. I am of the opinion that the word "with" has the force of the word "also" or "and" and is a mere conjunctive.

Undoubtedly the circumstance that the water company was not entitled to engage in the public service of a telegraph or telephone company, and the line was going into a region where there was no reason to suppose that there would be any public service of that sort, would naturally lead to the supposition that the telegraph and telephone line would be used for the purpose of the water company only. But against any inference from that circumstance is the very broad language of the grant itself, to which I have already alluded. It is a "telegraph or telephone line or lines" without limit in number, or any direct designation of purpose for which it was to be used, unless it be found in its

immediate connection with the grant of a right of way *"for all purposes."*

Moreover, I am of the opinion that this is a case where the rule that before a complainant can have relief of this sort in this court his right at law must be perfectly clear, does not apply in its full force. The complainant here is simply asking that the defendants should not enter with strong hand and destroy its property, of which it has full possession and right of possession. See in this connection, *French* v. *Robb, 67 N. J. Law (38 Vr.) 260.* The case is far outside that relied upon by defendants, to wit, *Broome* v. *Telephone Co., 42 N. J. Eq. (15 Stew.) 141.* There the telephone company had hardly a color of right, and the landowner was defending his possession.

The effect of permitting the defendants not only to tear down the wires, which they did in this case, as before stated, but also to saw off the top of the poles, as is also charged and admitted, would be to compel the complainant either to wait for years the result of an action of trespass before enjoying the easement, or else to admit that the construction of the grant claimed by the defendants is the true one, and apply for condemnation of the additional right so claimed, and incur all the expense and hazard of condemnation proceedings.

On the contrary, I think the rule of clear right at law ought to be applied to the man who undertakes to enforce his rights by the strong hand, and that the defendants should be enjoined from enforcing his right in that manner until he shall establish it at law. I think, therefore, that the complainant is entitled to relief in this court.

One other point made by the defendants remains to be considered. The defendants offered parol proof, and it was admitted, subject to timely objection by the complainant, to the effect that at and before the time when one or more of the original grants in this case was made the purchasing agent of the water company stated to that particular grantor that the telephone line was to be used only for use in assisting in the construction and maintenance of the water works. I stated at the hearing, and I still think not only that the evidence was incompetent as tending to vary a written instrument, but that it

was not of a character to rise to the dignity of a contract or representation which affected the transaction. In this connection I refer to *Chetwood* v. *Brittan, 2 N. J. Eq.* (*1 Gr. Ch.*) *438,* on motion for an injunction, and *4 N. J. Eq.* (*3 Gr. Ch.*) *334,* on final hearing. I dealt with that case in *O'Brien* v. *Paterson Brewing and Malting Co., 69 N. J. Eq.* (*3 Robb.*) *117,* and will not repeat what I there said. I will only add that I attempted, and, I think, succeeded, in there drawing a distinction between the case where the parol evidence amounted to a stipulation that the instrument in question was not, under certain circumstances, to have binding effect, and one in which its effect was to vary the construction to be put by the court upon a written contract. In the latter case the rule is hard and fast that parol evidence cannot be used except in a direct proceeding to reform the contract. This element is not found in this case. Moreover, I see nothing in the evidence to lead to the conclusion that the remark made by the purchasing agent, as testified to by the witness, amounted to anything more than a casual explanatory remark, quite insufficient to maintain a bill to reform.

But if I had come to a different conclusion on this point I should have been met by another point made by the complainant in answer thereto, namely, that it stands in the position of a *bona fide* purchaser without notice of the parol agreement. The contents of the agreement between the city and the complainant shows a consideration passing or to pass between the two, and the complainant entered and put up its new line of poles and incurred other expenses on the strength of that agreement as it appears in writing, and this constitutes it a *bona fide* purchaser for value.

Upon the whole case, then, I find it necessary to adjudge and determine only this—that the defendants have no such right, adverse to that claimed by complainant, as·to entitle them to enforce such right, if any, by the strong hand, and will advise a decree for an injunction.