ALFRED R. BECKER AND THE SUMMIT BUILDING AND LOAN ASSOCIATION, A CORPORATION, PLAINTIFFS, v. CLARENCE KELSEY AND WILLIAM E. LUDWIG, DEFENDANTS.

Decided November 13, 1931.

For the plaintiffs, *Insley, Vreeland & Decker.*

For the defendants, *Kelsey & Ludwig.*

ACKERSON, S. C. C. The plaintiffs, Alfred H. Becker and the Summit Building and Loan Association, are seeking to recover damages from the defendants, Clarence Kelsey and William E. Ludwig, for the alleged breach of a written contract made between said Alfred R. Becker, party of the first part, Max Margulies, party of the second part and said Clarence Kelsey and William E. Ludwig, party of the third part, a copy of which is attached to and made a part of the complaint. It is to be noted that the plaintiff the Summit Building and Loan Association, is not directly a party to the contract.

It is recited in this contract that on August 29th, 1929, premises known as Nos. 920-922 West Side avenue, Jersey City, were about to be sold by the sheriff under a decree of the Court of Chancery in a foreclosure suit brought by the Summit Building and Loan Association against John K. Armour and others and that there was due under said decree to the Summit Building and Loan Association the sum of twenty-three thousand eight hundred thirty-three dollars and ninety-four cents ($23,833.94), with interest and taxed costs, and to Max Margulies, a subsequent mortgagee, the sum of three thousand dollars ($3,000) with interest and costs, and at the same time Clarence Kelsey held a third mortgage on said premises, recorded subsequent to the commencement of the foreclosure suit, upon which there was due three thousand six hundred dollars ($3,600) besides interest.

The contract further recites that: "It is the desire and intention of said party of the third part" (Kelsey and Ludwig) "to purchase said premises at said sale, free of all encumbrances except unpaid municipal liens and rights of tenants."

There is a further statement in the agreement by way of recital that the "Summit Building and Loan Association has agreed to accept a first mortgage upon said premises from the party of the third part" (Kelsey and Ludwig) "for the amount due said Summit Building and Loan Association in said decree in the event that the said party of the third part purchase or acquire title to said premises at said sale," and that "the party of the second part" (Max Margulies) "has agreed to accept a second mortgage in the sum of two thousand five hundred dollars ($2,500) for two years, upon said premises in the event that said" Kelsey and Ludwig "purchase or acquire title to said premises at said sale."

The agreement then goes on to provide in substance that should said Alfred R. Becker, designated as party of the first part, presumably for the purpose of acquiring title to the property at the foreclosure sale, "or any one acting in his behalf bid in said premises at said sale," that he would "either assign or cause to be assigned the bid at said sale to

said" Kelsey and Ludwig, "or at his option" (Becker's) "will take title to said premises and thereupon convey said premises" to Kelsey and Ludwig. The latter after reciting that it was "their desire and intention to purchase said premises," expressly agreed that they would "upon acquiring title to said premises, as aforesaid, execute a first building and loan mortgage upon said premises to" the Summit Building and Loan Association, "together with the usual bond, conditioned for the payment of the amount then due to said" association "under said decree, &c., which mortgage shall be in the *usual building and loan form* and be secured further by pledge of said building and loan shares having maturity value of same amount to be subscribed for by said party of the third part, &c." Kelsey and Ludwig further agreed that they would "forthwith upon acquiring title to said premises, execute a second mortgage upon said premises" to the said Max Margulies, "together with the usual bond, conditioned for the payment of the said amount of two thousand five hundred dollars ($2,500) in two years from the date thereof, with interest at six per cent. per annum, payable semi-annually, with the privilege of paying said mortgage in full at any time before maturity with interest to date of payment; and said" Kelsey and Ludwig "will at the same time pay" said Margulies "the arrears of interest on his mortgage together with five hundred dollars ($500) on account of principal, thereby reducing same to said sum of $2,500."

The complaint in this action is set forth in two counts, one in behalf of the Summit Building and Loan Association and the other in behalf of Alfred R. Becker. After referring to the aforesaid agreement the complaint alleges generally that on August 29th, 1929, said Becker "bid in the property mentioned in said agreement * * * said bid being entered in the name of Florence I. Nichols." It is also alleged that "said agreement was entered into for the benefit of the said Summit Building and Loan Association, in particular to secure to it the payment by said defendants, Kelsey and Ludwig, the amount due to the said Summit Building and Loan Association, on its decree mentioned therein."

It is further alleged that "said plaintiffs have done all things agreed by them to be done and performed under said agreement and have been at all times ready, able and willing to perform the said agreement, and have tendered performance" to the defendants, "but the said defendants did * * * on October 31st, 1929, refuse to accept performance * * * and have wholly neglected and refused and still neglect and refuse to perform said agreement," &c., to the plaintiffs' damage.

The defendants have answered setting up thirty-six defenses to the first count and thirty-one defenses to the second count of the complaint, and raising thirteen objections in point of law.

The plaintiffs now move to strike out the answer and objections in point of law, upon grounds presently to be considered.

Defendants in their brief have raised the point that the affidavits supporting the plaintiffs' motion were taken before one of the counsel in the cause, and therefore ineffective under the rule in *Den* v. *Geiger,* 9 *N. J. L.* 225. The affidavit in the cited case, however, was offered on the return of a rule to show cause why a verdict should not be set aside, which is a somewhat different situation than in the case of an affidavit supporting a motion under rule 81 of the Supreme Court. Furthermore the master in chancery who took these affidavits is not an attorney of record in the case. In any event the plaintiffs have supplied identical affidavits taken before a notary public in no way connected with counsel in the case. So I do not consider that the affidavits accompanying the motion are defective or void.

Plaintiffs' notice of motion fails to allege any reason for striking out the defendants' first defense and so it must stand.

The second defense to the first count alleges in substance a defect in the title to the premises in question and it is argued that this defense is sham. It is recited in the contract that "it is the desire and intention of said party of the third part" (Kelsey and Ludwig) "to purchase said premises at

said sale, free of all encumbrances except unpaid municipal liens and rights of tenants." Undoubtedly recitals in deeds and agreements may be used to discover the intention of the parties and a covenant may be implied from a recital in a deed or agreement, if it appears from the recital itself or from the whole contract taken together that the parties intended to do the thing which is the basis of the action. *Monks* v. *Provident Inst., &c.*, 64 *N. J. L.* 86; *Bellisfield* v. *Holcombe*, 102 *N. J. Eq.* 20. Taking the instrument as a whole there can be no doubt that the parties intended that the defendants should have a title free from encumbrances. Furthermore in every contract for the sale of lands there is an implied agreement on the part of the vendor to make good title for the lands to the vendee. *Meyer* v. *Madre-perla*, 68 *N. J. L.* 258 (at *p.* 266); *Lounsberry* v. *Locander*, 10 *C. E. Gr.* 554.

The defendants' affidavits seem to indicate an encroachment of the building intended to be conveyed upon adjoining property owned by a third party and this, if true, would amount to an encumbrance and probably create a defective title, and hence the defense cannot be classed as sham.

The third and fourth defenses to the first count are but repetitions of the first defense of defective title couched in slightly different language, and are not, therefore, sham as claimed by the plaintiff, but the court, in the interest of clarity and brevity, will exercise its prerogative, and strike out these defenses for duplicity.

The fifth defense alleges in substance that the plaintiff Alfred R. Becker knew of the existence of the alleged encroachments and was bound in duty and conscience to disclose their existence to the defendants, which he failed to do, and that executing the agreement without such disclosure, followed by the sheriff's advertisement of sale without notice of encroachments therein, amounted to a fraudulent representation by said plaintiff that the lands in question were free of encumbrance to defendants' damage.

Plaintiffs' claim that this defense is frivolous and I am inclined to agree that it is. As a rule, fraud and misrepre-

sentation can exist only where a false statement has been made. 39 *Cyc.* 1255; *Kuka* v. *Grant,* 73 *N. J. L.* 451; *Denman* v. *Mentz,* 63 *N. J. Eq.* 613. An exception to the rule that a false statement must be made is recognized in case where, by reason of the confidential relation of the parties or other pacts, the duty is imposed on one of the parties to the transaction to make full and complete disclosure to the other party of all the facts known to him which are material to the transaction. Where such duty exists, an omission to make such complete disclosure is classed as a form of fraud or misrepresentation. If no special duty to make disclosure exists by reason of the confidential relation of the parties or other special facts, omission by the one party to disclose to the other facts material to the transaction and known to him does not amount to fraud or misrepresentation, so long as he takes no active steps to prevent the adversary party from discovering for himself the actual condition of facts. 39 *Cyc.* 1256 (11).

The defense as pleaded does not disclose any false statement actually made, nor is any confidential relationship between the parties alleged to have existed nor any special facts set forth from which a duty to make full and complete disclosure could arise and it does not appear from the pleading that any active steps were taken to prevent the defendants from discovering the actual conditions. Under such circumstances the attempted defense is frivolous and will be stricken out.

The sixth defense alleges that the plaintiff Alfred R. Becker made no tender of performance on October 31st, 1929, the date finally set for performance, and the seventh defense alleges that said Becker did not make tender of performance within a reasonable time after August 29th, 1929 (date of contract). Inasmuch as no time for performance is fixed in the contract, and it is alleged that the plaintiffs subsequently made October 31st, 1929, the time for performance by notice, it is open for the defendants to protect themselves in either event, and their affidavits certainly raise a question of fact upon the subject of these two defenses and they cannot be stricken out as sham.

The eighth defense after alleging that the plaintiff Alfred R. Becker, by notice made October 31st, 1929, the time for performance of said agreement, proceeds to state that on September 9th, 1929, the chancellor made an order in said foreclosure suit confirming the sale of the premises in Florence I. Nichols and directing the sheriff to execute a conveyance in the law to her, and that thereupon she became the equitable owner of said premises, although the sheriff's deed to said premises had not been delivered on said October 31st, 1929, the time set for performance of the agreement in question. The point of the defense is then alleged in this language: "By *reason of the confirmation of said sale* in said Florence I. Nichols, said plaintiff Alfred R. Becker was not able, ready and willing, on said October 31st, 1929, or within a reasonable time after the execution of said agreement, to either assign or cause to be assigned the bid at said sale to the defendants or to take title * * * and convey same to the defendants."

The plaintiffs insist that this alleged defense is sham and I am convinced that it is. It is not true that the *mere confirmation* of the sheriff's sale in Florence I. Nichols would automatically place said Alfred R. Becker in the position of not being able, ready and willing on said October 31st, 1929, to assign said bid or cause same to be assigned to the defendants, &c. The agreement upon which this suit is based expressly provides that "should the party of the first part" (Becker) *"or any one acting in his behalf* bid in said premises at said sale, the party of the first part will either assign or cause to be assigned the bid at said sale to said party of the third part" (Kelsey and Luwig). The complaint alleges "that on August 29th, 1929, said Alfred R. Becker bid in the property mentioned in said agreement at the sheriff's sale referred to therein, said bid being entered in the name of Florence I. Nichols." This is admitted by defendants' affidavits, and the defendants do not deny the assertion in plaintiffs' affidavits that Florence I. Nichols executed an assignment of said bid to the defendants, although they do deny that they were ever informed of it or that it was tendered

to them. The defendants' position would seem to be, therefore, that an assignment of the bid would not be effective after the confirmation of the sale in said Nichols. It is settled, however, that a bidder to whom property has been struck off at a judicial sale may assign his bid before the deed has been delivered, and the deed will be made directly to the assignee and pass the title to him. 35 *C. J.* 93, § 147. Inasmuch as the sheriff's deed had not been delivered on October 31st, 1929, according to the allegations of this particular defense, it follows that an assignment of the bid to the defendant would have been effective.

The ninth defense is to the effect that the plaintiff Alfred R. Becker did not at any time notify or inform the defendants whether he had elected to assign or cause said bid to be assigned to the defendants or to take title to the lands and convey them to defendants.

Plaintiffs insist that this defense is sham, but it is supported by defendants' affidavits, and I am not called upon to say whether it is legally sufficient or not. It will not be stricken out as sham.

The tenth defense alleges that under the agreement in question the Summit Building and Loan Association was to accept a bond and mortgage upon the lands in question "in the event that defendants purchased or acquired title to the said lands * * *, and the defendants were to execute a bond and mortgage on said lands to the plaintiff Summit Building and Loan Association only in the event they acquired title to said lands," and that they did not purchase or acquire title thereto. This is undoubtedly true for the defendants could not give a bond and mortgage unless they secured title to the premises, but they couldn't escape liability under the plain terms of the agreement, a copy of which is attached to and made a part of the answer, if they refused to take a good title if tendered to them, because the agreement clearly shows that they were required to take title if tendered by Becker. The complaint alleges that the defendants refused to accept title, and, of course, it would be no answer to say that they could not give the bond and mort-

gage because they did not acquire title without asserting that such failure was chargeable to the plaintiffs, or at least that it was through no fault of the defendants. This attempted defense must, therefore, be stricken out as frivolous.

The eleventh defense asserts that under the agreement in question if the plaintiff Alfred R. Becker elected or intended to cause said bid at the sheriff's sale to be assigned to the defendants, he was required to notify defendants of his election and intention to cause said bid to be so assigned within ten days after said sale in order that said sale could be confirmed in the names of the defendants, which he failed to do. There is no such limitation in the agreement, however, nor is there any legal requirement that such a bid must be assigned or delivered before the sale has been confirmed in order to be effective. 35 *C. J.* 93, § 147. This defense will be stricken out as sham.

The twelfth and thirteenth defenses merely set up a different theory of damages than the defendants surmise that the paintiffs are claiming. By turning to the complaint, however, we find that the plaintiffs do not disclose their theory of damages. The only allegation under this head is as follows: "By reason of the aforesaid the plaintiff * * * has sustained great damage, to wit, the sum of twenty-three thousand eight hundred fifty dollars and twenty-eight cents ($23,850.28)." The defendants have in another part of their answer denied this allegation and that puts the plaintiffs to their proof, and the defendants will have the right to advance any matter to show that the damages are not as claimed. Prior to the Practice act of 1912, evidence by way of mitigating damages was admissible under the general issue. It could not be specially pleaded, and could only be given in evidence under the general issue. A plea to the damages merely was vicious. *Hopple* v. *Hegbee,* 23 *N. J. L.* 342 (at *p.* 352). The new Practice act and the rules adopted in pursuance thereof, have not changed this principle. Rule 58 of the Supreme Court, in dealing with defenses has reference to the old pleas in bar and does not require matters in mitigation of damages to be specially pleaded. I do not consider the ruling in

*Schwarz Brothers Co.* v. *Evening News Publishing Co.*, 84 *N. J. L.* 486 (at *p.* 496), as laying down a different rule. That was an action for libel against the owners of a newspaper, to which the defendant set up, as a defense, its honest belief in the truth of the publication. The court held that this would not be a defense to the action, since the plaintiff in any event would be entitled to nominal damages. The court then proceeds to say: "I see no harm that can come the plaintiff from allowing the defendant to appraise him in advance that an attempt will be made to mitigate the damages, and it may be important to the defendant in a jurisdiction where * * * punitive damages are permitted. * * * I, therefore, permit a plea setting up in mitigation of damages that the defendant honestly believed in the truth of the publication." In the case *sub judice* the question of punitive damages is not involved, and in any event the pleading was allowed to stand in the cited case primarily because it could do "no harm" to the plaintiff to be thus appraised of the defendant's position on the question of damages. The point raised in the instant case was not definitely decided. As already intimated these defenses will be stricken out as frivolous.

The fourteenth defense alleges that Max Margulies, who is not made a party to this suit, did not make tender of performance to nor a demand of performance of the contract by the defendants, and further that said Max Margulies was not ready, willing and able to perform the contract on October 31st, 1929, nor within a reasonable time from its date.

It is quite apparent that this pleading attempts to combine two separate and distinct defenses as a single defense under one head, contrary to rule 57 of the Supreme Court, which requires that "where several defenses are pleaded, each must refer to the cause of action which it is intended to answer, and must be *separately* stated and designated as a separate defense." Since this pleading is improper, the court will strike it out of its own motion, for the reason stated. *Mt. Pleasant Cemetery Co.* v. *Erie Railroad*, 74 *N. J. L.* 100.

The fifteenth defense is similar to that just considered,

except that the Summit Building and Loan Association is substituted as the defaulting party instead of Max Margulies, and since two defenses are combined in the one pleading, it will be stricken out as improper.

The sixteenth defense alleges *inter alia* that the plaintiff Becker fraudulently represented to the defendants, as an inducement for the agreement in question, that the premises involved had been appraised at a value of forty thousand dollars ($40,000) by the appraisers of the Summit Building and Loan Association, which was not true. Plaintiffs say that this defense is sham but finding it supported by defendants' affidavits, I cannot strike it out for that reason.

The seventeenth defense raises the question of *ultra vires* with respect to the legal ability of the Summit building and loan to accept the bond and mortgage required to be given to it by the defendants under the terms of said agreement. The contention being that the principal of said bond and mortgage, being the amount of said association's decree in the Chancery suit, plus interest and costs, would be a loan in excess of eighty per centum of the cash value of the premises, and, therefore, prohibited by subdivision 11, section 24, chapter 251, *Pamph. L.* 1918. (See subdivision 11, section 26, chapter 65, *Pamph. L.* 1925). This act provides, *inter alia,* that "the funds of every such association shall be invested in the following and no other way: In loans to members on bonds secured by mortgage which shall be a first lien on real estate in this state, not to exceed eighty per centum of the cash value thereof."

The plaintiffs claim that this defense is frivolous. In the first place the allegation in this defense that: "By the terms of said agreement it was agreed that the said association would loan the defendants the said sum," &c., is a pure conclusion of the pleader. I am inclined to think that the transaction as outlined by the agreement in question did not contemplate a fresh loan of the funds of the association, but rather that the association was protecting a loan already made. A copy of the agreement is annexed to and made a part of the answer.

Subdivision 5 of section 26 of the above act in dealing with loans to non-members or to members without pledge of shares provides *inter alia:* "A purchase-money mortgage given to such association upon real estate sold by it shall not be considered a loan within the meaning of this subdivision." While this provision may not be strictly applicable to the present situation, nevertheless, it shows a legislative policy to remove from the strict rule regarding security for loans, situations where the association has already invested its money, but a foreclosure demonstrates that it is faced with the possibility of taking absolute title to the mortgaged property and holding same for a long time, unless it can take a new bond and mortgage for the amount due, without being hampered by the statutory limitation as to the percentage of value.

In the instant case, if the Summit Building and Loan Association had taken title at the foreclosure sale in its own name, and then taken a mortgage from the defendants, without the pledge of any shares, there would have been no doubt about the transaction being perfectly within the power of the association. It seems to me, therefore, that where the association allows another to take title directly from the sheriff under an agreement that the amount due the association will be secured not only by a new bond and mortgage but by the pledge of stock, that the same rule should be applied by construction so as to effectuate the clear legislative intent.

If I am wrong about this, however, it seems clear that by recognizing the legal ability of said association to contract in the first instance, and by thus inducing the plaintiffs to change their positions, and especially inducing the plaintiff Becker to actually bid in the property, the defendants are estopped in this suit on the contract from attacking collaterally the fact which by their conduct and admissions inter parties they conceded. *Belvidere Water Co.* v. *Inhabitants of Belvidere,* 92 *Atl. Rep.* 364; 16 *Cyc.* 699; 14a *C. J.* 330, § 2172; *Woolley* v. *Brewer,* 1 *N. J. L.* 172.

Furthermore the question of whether a contract by a building and loan association for a particular bond and mort-

gage is an unauthorized exercise of corporate powers, or beyond corporate powers, cannot be raised collaterally by individuals, but can only be set up by the state in a direct proceeding for that purpose. *Northeastern Tel., &c., Co.* v. *Hepburn,* 72 *N. J. Eq.* 7; 65 *Atl. Rep.* 747; *Bay City Building and Loan Association* v. *Broad (Cal.),* 69 *Pac. Rep.* 225; *McCarter* v. *Pitman et al.,* 74 *N. J. Eq.* 255; *Prindwille* v. *Johnson & Higins,* 92 *Id.* 515; *Mountain Side* v. *Board of Equal of Taxes,* 81 *N. J. L.* 583; *Gen. Inv. Co.* v. *Bethlehem Steel Corp.,* 88 *N. J. Eq.* 237; *Harris* v. *Independence Gas Co.,* 76 *Kan.* 750; 92 *Pac. Rep.* 1123; 14a *C. J.* 335, § 2178.

We must also notice that in paragraph 7 of this seventeenth defense it is alleged that "said association approved the making of said loan to the defendants." It has been held that since the valuation of property for loaning purposes devolves upon the proper officers of such associations without the approval or sanction of any court or tribunal, that their judgment exercised in good faith cannot be attacked collaterally. *Dunne* v. *Inc. Order of Foresters (Cal.),* 196 *Pac. Rep.* 41; 18 *A. L. R. (Anno.)* 639.

For the reasons already stated it is apparent that the seventeenth defense must be stricken out as frivolous.

The eighteenth defense alleges in substance that the decree of the Court of Chancery in a specific performance suit brought by the present plaintiffs against the defendants and said Max Margulies, in which the bill was dismissed, is *res adjudicata* upon the question of whether the giving of the bond and mortgage by the defendants to the Summit Building and Loan Association for the amount of its decree in the foreclosure suit, as provided for in the agreement in question, would constitute a technical loan under the provisions of the Building and Loan act above referred to. The purpose of this defense is no doubt to lay a foundation for establishing that the association cannot lawfully receive said bond and mortgage, because given for a loan in excess of eighty per centum of the cash value of the property concerned. The plaintiffs move to strike out this defense as sham.

A copy of the vice-chancellor's conclusions delivered orally

at the close of the argument in the specific performance suit, as well as a copy of the decree therein, were furnishd by the defendants upon the argument of this motion. From the opinion it appears that the vice-chancellor was in doubt as to the questions raised by the bill and for that reason dismissed it, without deciding the questions involved. At the close of his oral deliverance the vice-chancellor said, "the decision goes not in favor of the defendants but rather against the complainants and it goes on the ground that the court is in doubt as to the rights of the complainants and the defendants under this agreement, and that the decree of specific performance is refused, not because the title is bad, or because the contract is not a contract, or that the building and loan association cannot perform its part, but because the court is really in doubt on these questions." Furthermore the decree itself states the complainants' bill be dismissed "but without prejudice, however, to the right of said complainants or of said defendant Max Margulies to bring an action at law against the said defendants * * * as they may be advised." It is quite apparent, therefore, that the defense were considering it sham.

The nineteenth defense is but a repetition in another form of the same defense set up in the seventeenth defense, and is, therefore, duplicitous as well as frivolous for the reasons already stated and will be stricken out.

The twentieth defense is largely a repetition of the seventeenth defense except it alleges as an excuse for the defendants not completing the agreement in question that the building on the premises to be conveyed to the defendants encroached upon the adjoining property on the north. Therefore, it is asserted, the defendants could not give the Summit Building and Loan Association a first mortgage lien on all of the premises called for in said agreement, and that as the said association could not legally, under the Building and Loan act above referred to, loan money on any but a mortgage constituting a first lien on the property, said Becker could not perform his part of the agreement.

In so far as this defense attempts to set up a defect in title

it is duplicitous. In so far as it attempts to raise the question of *ultra vires* with respect to the corporate plaintiff's legal ability to accept the bond and mortgage called for by the agreement, it is frivolous for the reasons already stated in considering the seventeenth defense and will be stricken out by the court of its own motion for the reasons stated.

The twenty-first defense merely asserts that the property bid in at the sheriff's sale in the name of Florence I. Nichols did not include all of the property called for by the contract in question, and for that reason said agreement could not be performed by the plaintiffs. This is purely repetition rendering the pleading duplicitous, and it will be stricken out for that reason.

The twenty-second defense is to the effect that after the decree in the aforesaid foreclosure suit the Summit Building and Loan Association, Max Margulies and Louise Mrotzik (the latter having purchased the premises pending the foreclosure suit) entered into an agreement whereby upon the payment of the sum of two thousand nine hundred eighty-two dollars ($2,982) in satisfaction of the taxed costs of said foreclosure suit by the said Louise Mrotzik, the final decree should stand and no further execution taken out for a period of one year. It is then alleged that in violation of this agreement, the said association on June 10th, 1929, sued out a further execution under which the premises were sold as hereinbefore stated and that by reason of the foregoing said sale was illegal and void and any title to the lands acquired by the defendants would have been subject to litigation, doubtful and defective.

The plaintiffs move to strike out this defense as sham. It may be sham but I believe that it should be considered as frivolous. It is apparent that for the reasons stated the sale should not be considered void, but at most only voidable, and it is settled that where a sale is not wholly void but only voidable, it cannot be attacked collaterally. Where the court had jurisdiction, errors and irregularities in the proceedings leading up to the order of sale or in the sale, cannot be made a ground of attack only by some direct proceeding. A fore-

closure decree is conclusive as to the amount due, &c., in so far as a purchaser at the sale is concerned. *State Mutual Building & Loan Association* v. *O'Callaghan,* 67 *N. J. Eq.* 103; 72 *Cyc.* 72 *(E).* The defendants cite the case of *Osborne* v. *Tunis,* 25 *N. J. L.* 633, in support of their contention, but this case is not in point because there the mortgagor after the decree paid *all* of the mortgage debt and costs accrued, and it was held that the complainant was stripped of all equitable rights under this decree, &c. There is no claim in the defense we are considering that the whole mortgage debt and costs were paid. It would seem therefore that the substance of this defense would have to be made the subject of a direct attack. The court will therefore, of its own motion, strike out this defense as frivolous.

The twenty-third defense to the first count sets up that the final decree in the specific performance suit hereinbefore mentioned is *res adjudicata* in so far as the issues of fact and law in the present case are concerned. I agree with the plaintiffs that this attempted defense is sham for the reason hereinbefore set forth in disposing of the eighteenth defense to the first count. The present defense will therefore be stricken out as sham.

The twenty-fourth defense to the first count alleges that the plaintiffs by bringing their suit in the Court of Chancery for a specific performance of the contract here involved made an election of remedies and are therefore estopped from prosecuting the present action. Again I agree with the plaintiffs that this attempted defense is sham. As already noted, the decree dismissing the specific performance suit, expressly states that it is without prejudice to a suit at law for damages. Furthermore, it is too well settled, to require the citation of authorities, that the unsuccessful prosecution of a specific performance suit is not a bar to an action at law upon the contract for damages. An election occurs only where there is a choice between inconsistent remedies. Both of these forms of action are in affirmance of the contract and are not therefore inconsistent. This defense will be stricken out for the reason stated.

The twenty-fifth and twenty-sixth defenses to the first count may be considered together. They assert that there is a lack of mutuality of obligation and remedy in the agreement, and that none of the parties thereto were bound by its terms to perform it, and especially that there was no obligation upon the defendants to purchase the premises for the reason that the agreement was merely an option whereby the defendants had the privilege of purchasing the lands if they elected so to do.

As was said in the case of *Sooy* v. *Henkelman*, 104 *N. J. L.* 540 (at *p.* 542):

"The distinction between a contract to sell and purchase real estate and an option to purchase is that the former creates a mutual obligation on the one party to sell and on the other party to purchase, while the latter merely gives the right to purchase, within a limited time, without imposing any obligation to purchase. An option and not a contract to purchase is effected by an agreement to sell real estate for payments to be made within a specified time and providing for forfeiture of money paid upon failure to make payment, where the purchaser does not agree to purchase, to make payment, or to bind himself in any way other than the forfeiture of the payments made."

Under the agreement we are considering, the defendants bind themselves to make payment by giving bonds and mortgages instead of cash upon acquiring title to the premises. Taking this promise in connection with the recital in the agreement already referred to that "it is the desire and intention of said party of the third part" (Kelsey and Ludwig) "to purchase said premises," &c., it cannot be doubted that Kelsey and Ludwig unequivocally agreed to take title from Becker upon his bidding in the premises at the sheriff's sale. Undoubtedly recitals in deeds and agreements may be used to discover the intention of the parties, and a covenant may be implied from a recital in a deed or agreement, if it appears from the recital itself or from the whole contract taken together that the parties intended to do the thing which is the basis of the action. *Monks* v. *Provident Inst., &c.*, 64 *N.*

*J. L.* 86. Taking the instrument annexed to the answer as a whole there can be no doubt that the defendants are bound thereby and are not merely the possessors of an option. It is further claimed under these defenses that the plaintiff Becker was not obligated to bid in the premises at the sheriff's sale, hence there was a lack of mutuality which destroyed the efficacy of the instrument as a binding contract. The defendants, however, agreed to take title from Becker if he did in the premises and this placed the matter within the doctrine that the executed consideration for a promise is sufficient, if induced by the request expressed by, or properly implied from, the promise, it be a benefit to the promisor or a detriment to the promisee. Where a promise is in effect an offer contemplating acceptance by performance of a certain condition coupled with the entering into of a reciprocal promise by the offeree at the time of such performance, the performance of the condition under the circumstances contemplated, before a withdrawal of the offer, gives rise to a valid executory contract wherein the original promise is supported by the reciprocal promise arising upon the performance of the condition, irrespective of whether such performance is a benefit to the promisor or a detriment to the promisee. *Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co.,* 89 *Id.* 336.

It follows, therefore, that when Becker bid in the premises, as alleged in the complaint, this performance of the condition upon which defendants' promise was based, gave rise to the mutuality essential to a valid contract. Of course so far as the plaintiff Summit Building and Loan Association is concerned, it stands in the position of a party for whose benefit a contract has been made, and if the contract is otherwise valid, such party may sue upon it. *Pamph. L.* 1903, *p.* 541 (3 *Comp. Stat., p.* 4059, § 28).

It should seem therefore that the foregoing defenses are sham and they will be stricken out for that reason.

The twenty-seventh defense asserts that the agreement in question is for the loan of money on a bond and mortgage, and no damages are recoverable for the breach of an agree-

ment to borrow money. Plaintiffs move to strike this out as sham. In order to answer this question it is unimportant to decide whether the agreement, so far as such parties are concerned, is for the borrowing of money or not, because the breach of a valid contract gives rise to a cause of action if only for nominal damages. *Jurnick* v. *Manhattan Optical Co.*, 66 *N. J. L.* 380. The authorities cited by defendants are not to the contrary, and the case of *Pilot Building and Loan Association* v. *Chieff*, 1 *N. J. Mis. R.* 547, relied upon by them clearly holds that at least interest, for the time the money is held available, is recoverable

This defense is sham and will be striken out.

The twenty-eighth defense is to the effect that the agreement upon which the action is based is incomplete because all of the terms of the bond and mortgage to be given to the Summit Building and Loan Association are not specified, in that the agreement does not provide whether they should carry any interest, dues, premiums, fines or default clauses, and does not state the time said bond and mortgage should run. It is objected that this defense is sham.

It cannot be said as a matter of law that the agreement in question is incomplete in the particulars above specified. The amount of the bond and mortgage is determined in the agreement as the amount then due on the decree, with costs and sheriff's charges. The time of payment, interest charges and form of the bond and mortgage are comprehended within the following extract from the agreement pertaining thereto. "A first building and loan mortgage upon said premises to the party of the first part, together with the usual bond, * * * which mortgage shall be in the usual building and loan form and be secured further by pledge of said building and loan shares," &c. The "form" of the building and loan mortgage contemplated in this agreement was undoubtedly the form usually used by the Summit Building and Loan Association. This is emphasized by the fact that the stock which was to be pledged as security for the mortgage is designated as "said building and loan shares." The only such association named in the agreement is the Summit Building

and Loan Association, and furthermore it must be noted that in referring to the "usual building and loan form" the word building is written with a capital B, and the word loan with a capital L, and the conjunctive sign "&" is used instead of the word and. It undoubtedly follows that if the usual form of the Summit Building and Loan Association mortgage was to be used, that the "usual bond" referred to is the usual bond of said association. So that we have a situation where the parties to the agreement have agreed upon all their terms by referring in the written agreement to detached papers which may be properly identified by parole testimony. It is well settled that the fifth section of the statute of frauds (2 *Comp. Stat.*, p. 2612) is sufficiently complied with if the agreement is contained in several papers provided that the paper which is signed refers to the others in such a way that they may be identified by parole, if the intention that the papers are to be read together appears upon the face of the paper which is properly signed. *Johnson & Miller* v. *Buck,* 35 *N. J. L.* 338 (at *p.* 344) ; 27 *C. J.* 384, § 477. For anything appearing on the face of the agreement in question, the provisions assailed as indefinite and uncertain may be reduced by competent evidence to definite terms. This is an instance for the application of the familiar rule declaring "that is certain which by necessary reference is made certain." *Cross* v. *Snakenberg,* 26 *Iowa* 636; 102 *N. W. Rep.* 508; *Mercer* v. *Payne-Carnaby Co.* (*Nev.*), 192 *Id.* 951.

Furthermore it is settled that failure to fix either an interest rate or a due date in mortgages is not fatal, because the court will presume that the legal rate of six per cent. is intended and that the mortgage is to be payable on demand or in accordance with usual building and loan practice. *Cavanna* v. *Brooks,* 97 *N. J. Eq.* 329 (at *p.* 334).

Inasmuch, however, as it will be necessary to refer to and identify other papers in connection with this defense, and it may be necessary to take proof to reduce to a certainty the terms of the agreement assailed as uncertain and indefinite, it follows that the defense should not be stricken out as sham.

The twenty-ninth defense alleges that the plaintiff Becker did not perform the condition precedent to bid in the lands at the sheriff's sale and assign or cause to be assigned the bid to the defendants or at his option take title and convey the lands to the defendants, but that he bid in part of said lands in the name of Florence I. Nichols, in whose name the sale was confirmed and that the defendants were not obliged to take a conveyance from said Nichols, and that therefore the defendants were unable to execute a bond and mortgage to the Summit Building and Loan Association.

The defendants say that this defense is sham, but it is unnecessary to go so far in order to eliminate this defense. It is clearly duplicitous, being clearly an amplification of the first defense to the first count which denies that the plaintiffs have done all things agreed to be done and performed by them under the agreement and also denies that they have been at all times ready, able and willing to perform the said agreement and that they have tendered performance thereof to the defendants. It may be true that the defendants were not obliged to take a conveyance of the lands directly from Florence I. Nichols, but this is merely an argument in support of the proposition already raised that the plaintiffs were not ready, able and willing to perform the agreement. In order to condense the answer to one statement of a defense, the court will of its own motion strike out this defense as violating the rule against duplicity.

Turning to the thirtieth defense to the first count, we find that it asserts there is no privity between the Summit Building and Loan Association and the defendants and that said agreement was not made for and is not one for the benefit of said association. It is apparent that this defense is sham as contended by the plaintiffs, for the agreement itself demonstrates that it was for the benefit of said association. The allegation that there was no privity between said association and defendants is of course frivolous in view of section 28 of the Practice act of 1903 (3 *Comp. Stat., p.* 4059, § 28), which permits any person for whose benefit a contract is made to maintain an action thereof. This defense will therefore be stricken out.

The thirty-first defense to the first count alleges that the agreement in question is indefinite and uncertain in that it does not provide for the price to be paid by the defendants for the lands to be conveyed. The plaintiffs claim that this is sham and it undoubtedly is. The price to be paid by the defendants for the land is clearly ascertainable from the agreement.

The thirty-second defense to the first count is to the effect that the agreement upon which this action is brought is contrary to public policy and illegal and therefore void and unenforceable. The defendants have not specified in what respect the agreement is contrary to public policy. It may be surmised, however, that the question intended to be raised is that the agreement is to suppress bidding at the sheriff's sale. There is no express covenant in the agreement to that effect, however, and if the Summit Building and Loan Association and Margulies were content to let Becker bid in the property at the sheriff's sale, under a promise to convey it to the defendants in consideration of their agreeing to protect the Summit Building and Loan Association and Margulies by mortgages to the amount of their decrees in the foreclosure suit, this would be permissible and not contrary to public policy under the rule laid down to *De Baun* v. *Brand,* 61 *N. J. L.* 624. This defense is therefore sham as contended by the plaintiffs and will be stricken out for that reason.

The thirty-third defense to the first count is to the effect that the covenants of the plaintiffs and Max Margulies in said agreement are joint and dependent and an action thereon by the Summit Building and Loan Association and Becker as plaintiffs will not lie for the reason that Margulies is a necessary party to the action. The plaintiffs move to strike out this defense as sham. The defendants in support of the defense rely upon the case of *Alpaugh* v. *Wood,* 53 *N. J. L.* 638. That case, however, is authority for the proposition that where a contract assigns to each of several parties his several duties and does not bind them and make them responsible individually for the whole result to be jointly accomplished, the contract in so far as such parties are con-

cerned is several. 13 *C. J.* 574, §§ 551, 552, 553. Certainly Margulies could not be held responsible under the agreement in question if Becker, after bidding in the property, had refused to convey it to these defendants. It is settled that where the consideration furnished by obligees is several and not joint, the interest of the obligees may, *prima facie,* be regarded as several and not joint. 13 *C. J.* 578, § 573. Where the interest of the covenantees is several they may maintain separate actions, although the language of the covenant be joint. 30 *Cyc.* 110 (c). Furthermore this defense would seem to be in the nature of an old dilatory plea being addressed to the non-joinder of a proper party plaintiff. Such pleas are not considered as defenses, and under rule 56 of the Supreme Court the matter should be raised by a motion to strike out the complaint for non-joinder of parties. The defense is therefore sham and also improper under said rule 56 and will be stricken out.

The thirty-fourth defense to the first count alleges in substance that the agreement upon which this action is brought is not a binding agreement and provides for the sale of lands to the defendants and the execution by them of bonds and mortgages to the Summit Building and Loan Association and Max Margulies, and that the measure of damages for a breach thereof, if any, would be the difference between the purchase price and a lesser market value of the lands, and such an action cannot be brought by the present plaintiff without joining Margulies as a necessary party. The plaintiffs claim that this defense is sham. It is difficult to understand just what the defendants intend to make of this defense. If it is intended to rely upon the proposition that the action cannot be maintained by the present plaintiffs without joining Max Margulies, the pleading is duplicitous as the point is already covered by the thirty-third defense and as already noted is sham. If it is intended to rely upon the proposition that the agreement in question is not a binding agreement, again it is duplicitous and also sham. Furthermore an attempt is made to set up several defenses under one heading contrary to rule 57 of the Supreme Court. It

would also seem that the non-joinder of a party is properly the subject of a motion to strike out the complaint in substitution of the old plea in abatement pursuant to rule 56 of the Supreme Court and not the proper subject for a defense. This defense will therefore be stricken out as sham, duplicitous and improper under rules 56 and 57.

The thirty-fifth defense to the first count merely asserts that the damages suffered by plaintiff the Summit Building and Loan Association if any, were caused by the acts or omissions of the said Becker and Margulies and not by the defendants.

Plaintiffs claim that this defense is sham, but the affidavits accompanying the motion would seem to raise questions of fact under this head, and the defense will not be stricken out.

The thirty-sixth and last defense to the first count reasserts that by reason of the confirmation of the sheriff's sale in said Florence I. Nichols, said Becker was not able, ready or willing on October 31st, 1929, or within a reasonable time after the execution of the agreement in question, to either assign the bid at said sale or cause the same to be assigned to the defendants, and further alleges that said Becker did not within a reasonable time after August 29th, 1929, or on October 31st, 1929, make a tender to the defendants of a deed executed by himself and wife conveying said lands to the defendants.

The plaintiffs insist that this defense is sham, and in so far as it alleges that "by reason of the confirmation of said sale in said Florence I. Nicholas, said Alfred R. Becker was not able, ready or willing" to perform, it is an exact repetition of the eighth defense to the first count, and for the same reasons stated in considering the latter defense, it is sham. In so far as it is alleged that said Becker did not make a proper tender of a deed, this defense is a repetition of the sixth and seventh defenses but is not sham as already noted.

It is apparent, however, that this entire defense is duplicitous, and also violative of said rule 57 of the Supreme Court, because attempting to set forth two distinct defenses under a single heading, and must for such reasons be stricken out.

Coming now to consider the thirty-one defenses to the second count, we must note that there is no objection to the first defense to the second count and it will stand.

All of the remaining defenses are merely repetitions of defenses to the first count already considered and will not, therefore, be given further consideration, but will be treated in the same manner as the same defenses to the first count.

Under rule 40 of the Supreme Court the parties to this action have also submitted for determination at this time the thirteen objections to the complaint in point of law appended to the defendants answer.

All of these objections in point of law except the fourth, seventh, eighth, ninth, tenth and eleventh, are but repetitions of the same matter set up in some of the defenses already considered, and all are found to be without merit for reasons hereinbefore stated, and will be stricken out as insufficient without further comment.

The fourth objection in point of law is that the amended complaint is defective in that it does not allege or show the time at which the defendants ought to have performed said agreement, and the time at which they failed to perform and when the plaintiffs' cause of action accrued. This objection is based upon the case of *Bradley Beach* v. *Coast Electric Railway Co.*, 68 *N. J. L.* 73. If this case is really an authority for the proposition stated, the defendants can take no comfort from it. A copy of the contract upon which the present action is based is annexed to and made a part of the amended complaint, and it clearly shows that the agreement was to be performed within a reasonable time after its date which is August 29th, 1929, and the amended complaint alleges that the defendants "did on a certain date, to wit, October 31st, 1929, refuse to accept the performance of the said agreement * * * in accordance with its terms." It would seem therefore that all of the foregoing essentials are sufficiently expressed in the amended complaint. This objection will, therefore, be stricken out as without merit.

The seventh and eighth objections are to the effect that, while the amended complaint alleges a performance by the

plaintiffs of conditions precedent and a tender to the defendants, it fails to show whether the alleged tender was of the assignment of the bid at the sheriff's sale, or of a conveyance of the lands, and further that it is not alleged when said tender was made or of what it consisted and is a mere conclusion of law. The general rule, however, is that in pleading the performance of conditions precedent and of readiness and willigness to perform as well as a tender of performance, it is not necessary for the plaintiff to state the facts showing such performance, tender, &c., but he may aver generally that he has duly performed all stipulations and conditions on his part or has made a tender of performance. 13 *C. J.* 727, 728, §§ 850, 856; 3 *Comp. Stat., p.* 4089, § 118. The objection under consideration is, therefore, without merit and will be stricken out.

The ninth objection is that the amended complaint does not show that the plaintiff Alfred R. Becker ever exercised his option contained in the said agreement, or that he ever notified the defendants of his election or intention under said option. As just noted, however, in considering the seventh and eighth objections, it is sufficient to allege the performance of all conditions precedent generally without stating the facts showing such performance. The plaintiffs seem to have conformed with this requirement and the ninth objection to the amended complaint is, therefore, without merit and will be stricken out.

The tenth objection asserts that the amended complaint fails to show that the defendants ever purchased said lands at the sheriff's sale or that they ever acquired title to said lands.

In the first place the defendants were not required to purchase said lands at the sheriff's sale. They were required either to take an assignment of the bid at said sale, or to take a conveyance of said lands from said Becker. Nor was it necessary to allege that the defendants ever acquired title to said lands in order to set forth a good cause of action. Their refusal to accept an assignment of the bid or take a conveyance of said lands would constitute a breach of said

contract. The objection under consideration is, therefore, without merit and must be stricken out.

The eleventh objection is that the amended complaint shows that the damages "therein claimed * * * are not in accordance with law or within contemplation of the parties to the agreement or the proximate result of the alleged failure of the defendants to execute the bond and mortgage to the plaintiff."

The *ad damnum* clause of the complaint merely alleges that "by reason of the aforesaid the plaintiff * * * has sustained great damages, to wit, the sum of ( ) dollars." There is nothing in this language to indicate the theory upon which the damages are predicated, hence this objection is without merit and will be stricken out.

Probably with reference to the third objection in point of law further comment should be made. This objection is to the effect that the agreement on which the action is based is incomplete and does not provide the terms of the bond and mortgage to be made to the Summit Building and Loan Association and is otherwise incomplete and ambiguous. This matter was made the subject of the twenty-eighth defense to the first count and the twenty-fifth defense to the second count and for reasons therein stated, it will appear that the agreement in question may be made full, complete and definite by reference to papers therein referred to. These defenses were allowed to stand as raising questions of fact subject to proof, and therefore it will not do to say that the agreement is incomplete as a matter of law. From all that appears in the complaint and the agreement the latter is complete and does provide the terms of the bond and mortgage in party by reference as above stated. The defendants will have the benefit of their contention under the twenty-eighth defense to the first count and the twenty-fifth defense to the second count of the complaint and the agreement is not incomplete on the face of the pleadings and therefore the third objection in point of law is stricken out as above indicated.

Having considered all the questions raised by the plaintiffs'

motion, the result may be summarized by stating that all of the defenses to the first count of the amended complaint will be stricken out upon the grounds and for the reasons hereinbefore stated, except those defenses numbered as follows: One, two, six, seven, nine, sixteen, twenty-eight and thirty-five. All of the defenses to the second count will be stricken out except those numbered as follows: One, two, six, seven, nine, fourteen and twenty-five.

All of the thirteen objections to the amended complaint in point of law are found to be without merit and will be stricken out, and an order may be presented in accordance with the conclusion thus reached.